UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 06-58-B-W |
| | ) |
| JOHN PASCUCCI, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION ON MOTION TO SUPPRESS**

John Pascucci, charged in an indictment with conspiracy with the intent to distribute marijuana, has moved to suppress certain statements he made to federal law enforcement officers on August 2, 2006. Pascucci claims the statements were obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) and he also asserts the statements were involuntary because the officers induced him to speak with them by making false representations. An evidentiary hearing was held before me on January 26, 2007. Finding no factual support for either of Pascucci's claims, I now recommend the court adopt the following proposed findings of fact and deny the motion.

**Proposed Findings of Fact**

Bruce Gauthier is a Special Agent with the Bureau of Immigration and Customs Enforcement ("ICE"), Department of Homeland Security, assigned to the Houlton, Maine resident agency. He has been an employee of ICE, including his tenure with its predecessor agency, the U.S. Customs Service, since March 2003. On August 2, 2006, at approximately 8:00 p.m., Special Agents Shawn Serra and Gauthier went to the home of Pascucci in Gorham, Maine. The agents had evidence of Pascucci's involvement in certain marijuana smuggling and

distribution activity then under investigation.  Upon arrival at Pascucci's home, they spoke with his wife, and asked if Pascucci was home.  She indicated that he was not.  When asked if Pascucci was expected home soon, Pascucci's wife asked the officers to identify themselves, at which time they produced their credentials and identified themselves.  They told Pascucci's wife that they would return at a later time.  Pascucci's wife called Pascucci and explained the situation.  She was crying when she called and Pascucci told her to take their young grandson who was visiting and leave the residence.  He did so because he believed when he returned home he would be arrested.

      The agents remained in the area and waited in a driveway across the street.  They saw the vehicle driven by Pascucci's wife leave the residence.  At approximately 8:30 p.m., Agent Gauthier called Pascucci's cellular telephone.  He identified himself and asked if he was speaking with John Pascucci. Pascucci acknowledged that he was John Pascucci, stated that he was on his way home, and then told Gauthier, "Don't worry. I'm not running."   Special Agent Gauthier did not order Pascucci to come home.  Nevertheless, a relatively short time later Pascucci returned to his residence.  Sometime between 9:00 p.m. and 9:30 p.m., Special Agents Serra and Gauthier met Pascucci in his driveway.  They immediately identified themselves as law enforcement agents and indicated they wanted to talk with Pascucci.  No guns were drawn or visible.  Pascucci was not frisked and his personal space was not invaded in any way.  He stood on the deck/porch of his residence under a deck/porch light, while Agent Gauthier stood on the landing beside him, approximately two feet away.  Agent Serra was at the bottom of the deck/porch steps.  They informed Pascucci that they were conducting a narcotics investigation and wanted to ask him a few questions and show him a few photographs. Pascucci agreed to

speak with the agents and acquiesced to their remaining on his back porch to speak further. Pascucci neither invited them into the house nor did he ask them to leave.

For approximately forty minutes to one hour, Pascucci answered questions and viewed various photographs and documents. During this time the agents and Pascucci also engaged in some small talk. At one point during the interview, Pascucci's cooperation was discussed. Gauthier explained to Pascucci that if he was inclined to cooperate, now was the time to do so; Gauthier used an analogy of the ship leaving dock and explained that Pascucci would be left on shore if he chose not to cooperate now. Pascucci indicated that he wanted to talk to an attorney before deciding whether to cooperate and asked the agents not to be mad if he decided not to cooperate. Pascucci commented, twice, that if he did not cooperate he would probably be arrested soon and things would go harder for him. Gauthier explained to Pascucci that he did not want to mislead him into thinking that if he cooperated, he would not be arrested. Gauthier stressed to Pascucci that, while he did not have the authority to make a charging decision in his case, in Gauthier's opinion, Pascucci was going to be charged regardless of whether he cooperated. Pascucci also asked how much time he would have to serve in jail, stating rhetorically, five to ten years. At one point, toward the end of the conversation, Pascucci stated that if he cooperated he wanted a "walk." He then again added that he wanted to speak with an attorney before deciding whether to cooperate. At that point in time, the interview was ended.

During the course of the interview neither Special Agent Serra nor Gauthier ever threatened Pascucci, either explicitly or tacitly. They never displayed weapons. They never handcuffed Pascucci, or confined his movement to a particular area of his home. They never made any express or implied promises to Pascucci. Pascucci never asked them to leave. Despite the low-key tenor of the encounter, Pascucci subjectively believed that he was going to be

3

arrested, at least during the first part of the interview. The record is a little unclear about when the agents made clear to Pascucci that he was not going to be arrested that evening, although it is clear to me that by the time Special Agent Gauthier was explaining about the role of cooperation and its relationship to ultimate arrest, it was clear that the agents were not going to arrest Pascucci that night. Special Agent Gauthier says it is his common practice at the very beginning to tell a suspect in this sort of situation that he is not under arrest and is free to end the conversation. He assumes he did so with Pascucci on the night in question. Unfortunately Special Agent Serra, the officer who took notes of the interview and prepared the only written report of the events, neglected to make any notation of Gauthier making that statement to Pascucci. Pascucci says he was never directly told, at least at the beginning of the conversation, that he was not under arrest. The question of when Pascucci became aware he was not going to be arrested that evening is a little murky, but I am satisfied that despite Pascucci's subjective belief that when he got home he was going to be arrested, the officers, by word and deed, made it clear to him at some point fairly early in the conversation that he was not going to be arrested that evening. While the officers were asking questions, showing photographs and documents, and making comments about cooperation - conduct designed to elicit incriminating responses from Pascucci -- the interview was not custodial in nature.

Finally, one other, and most significant, factual dispute remains. Pascucci testified that the agents told him the conversation was "off the record."[1]  Both agents testified they never told Pascucci that anything he told them would be "off the record" or would otherwise not be used against him. Indeed, all three of the men agree that Special Agent Serra was taking notes during the entire interview. I find that Pascucci was not told that what he was saying to the agents was

---

[1] In my mind Pascucci's suggestion that he was told the conversation was "off the record" is inconsistent with his stated subjective belief that he was under arrest during the entire interview.

4

"off the record." I also find that the agents made no promises or inducements that would have rendered Pascucci's statements involuntary. Indeed, to the contrary, I find that Special Agent Gauthier went to great lengths to make sure he was not misleading Pascucci about the benefits of his cooperation.

## Discussion

Pascucci first moves to suppress his statements on the ground that they were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) and Dickerson v. United States, 530 U.S. 428 (2000), in that they were the product of an unwarned, custodial interrogation. For purposes of the Fifth Amendment, "in custody" means that the defendant has been formally arrested or has had his freedom of movement restrained to the degree associated with a formal arrest. United States v. Ventura, 85 F.3d 708, 710 (1st Cir. 1996) (citing Thompson v. Keohane, 516 U.S. 99, 112 (1995)). Whether the restraint on movement is sufficient to rise to the level of an arrest depends on the objective circumstances and how they would be perceived by a reasonable person standing in the shoes of the suspect. Id. at 711 (citing Stansbury v. California, 511 U.S. 318, 323 (1994)). "Relevant circumstances include 'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation.'" Id. (quoting United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987)).

Pascucci was not "in custody" when he made the statements to the officers and there is no basis under Miranda for suppressing these statements. Magistrate Judge Cohen previously observed in a recommended decision that the test to be applied to a "knock and talk" situation is an objective one, i.e., whether a reasonable person in Pascucci's position "would have felt free to

decline the agents' requests or otherwise terminate the encounter." United States v. Cannizzaro, Crim. No. 04-103-P-H, 2005 U.S. Dist. LEXIS 2976, *25, 2005 WL 757884, *8 (D. Me. Feb. 16, 2005) (aff'd Mar. 8, 2005).  I am satisfied that a reasonable person in Pascucci's position would have understood that he had the ability to terminate the encounter.  The officers did nothing that would have suggested to a reasonable person that he was not free to get the keys to his truck and go into his home without the officers following him.  Pascucci's subjective concern that he would be arrested when he returned to his home that evening came from his own idiosyncratic view of his predicament and was not the product of the officers' conduct.  Nothing the officers did converted this interview, even though it was relatively lengthy, into a custodial situation.  The tenor of the discussion remained low-key, the officers answered numerous questions Pascucci had about the benefits of cooperation, and the topics of conversation included incidental banter about sports.

Even in the absence of a finding of a custodial interrogation triggering the need to comply with Miranda, the burden is still on the government to prove by a preponderance of the evidence that the defendant's statements were voluntary.  Lego v. Twomey, 404 U.S. 477, 489 (1972).  The government must show that, based on the totality of the circumstances, the investigating agents neither "broke," Chambers v. Florida, 309 U.S. 227, 240 (1940), nor "overbore," United States v. LeBrun, 363 F.3d 715, 725 (8th Cir. 2004), the defendant's will, and that his statements were "the product of a rational intellect and a free will," Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  See also Lynumn v. Illinois, 372 U.S. 528, 534 (1963).  As this language suggests, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'"  Colorado v. Connelly, 479 U.S. 157, 167 (1986).

An officer's promise that everything the defendant said was "off the record" and would not be used against him is the type of coercive police activity that <u>could</u> render a statement involuntary in certain circumstances. <u>See</u> <u>United States v. Veilleux</u>, 846 F. Supp. 149, 154-55 (D.N.H. 1994) (indicating that a confession was involuntary when defendant was told that nothing he said would be used against him). However, in this case I have specifically found as a fact that the officers did not make any such promise to Pascucci. Special Agent Serra was admittedly taking notes throughout the conversation. Pascucci says he questioned the agent as to why he was taking notes when the conversation was supposed to be "off the record." I find it highly unlikely that such an exchange occurred.

I also find that even though Pascucci twice mentioned that he wanted to talk with an attorney before he made a decision about further cooperation with the officers, those comments do not render any of his subsequent statements involuntary. The mere fact that a suspect mentions an attorney, even during a custodial interrogation, does not mean that he is invoking his right to counsel and requesting that all questions cease. <u>See</u> <u>Davis v. United States</u>, 512 U.S. 452, 456-62 (1994). Pascucci never even came close to taking such a step. The evidence strongly suggests that Pascucci was interested in what the officers had to say and what information they had in their possession. In these circumstances, his "conversation" and the ensuing statements he made to the agents were voluntarily made.

## Conclusion

Based upon the foregoing I recommend that the court adopt these proposed findings of fact and deny the motion to suppress.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.


/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: February 1, 2007